## Commonwealth ex rel. Jackson v. Banmiller

*Conrad G. Moffett,* for relator.

*Bernard E. DiJoseph,* District Attorney, and *Nicholas Larzelere,* Assistant District Attorney, for Commonwealth.

CORSON, J., February 5, 1957.—In 1939, James Jackson, the above named relator, was sentenced by this court upon various bills charging rape and burglary, to a total of not less than 47½ years and not more than 95 years in the penitentiary.

Seventeen years later, Jackson filed the present writ of habeas corpus, raising five question as follows:

1. That the clerk made a clerical error in stating that each sentence was to run consecutively "with" the other sentences.

2. That as to one of the burglary sentences the record showed that it was to run concurrently and yet the penitentiary record showed it to be consecutive.

3. That relator thought that he was pleading guilty to burglary and had no knowledge that he was charged with rape.

4. That he was not guilty of rape.

5. That he was refused the right to obtain or to have counsel.

The hearing judge in the present writ was the judge who imposed the sentence. Since it was the longest sentence, outside of a life sentence, ever imposed by this judge, the facts are rather clear in his memory even after such a long period of time. The reason the sentence was so long was not because it was imposed in anger, but because of the fact that it was brought out at the hearing on the pleas of guilty that Jackson had stated to the officers that he could only obtain sexual satisfaction by rape and that it had to be a white girl.

This statement would be horrible enough but it seems to have been corroborated by his actions. Three

young girls had been raped in the vicinity of Elkins Park and in one case, at least, it was necessary for the victim to spend considerable time in the hospital after the attack. Jackson now says he had never had any unusual sexual urges and never knew that he was charged with rape. The unusual thing about the burglary charges, however, is that in each case the burglary was not based upon the contention that Jackson entered the house to steal, but that in each case he entered the house for the purpose of committing rape therein. One statement, in his own handwriting as to the Jenkintown burglary, corroborates this charge.

It is useless to recite the evidence at the plea or the evidence at the hearing on the writ. This relator well knew what he was charged with at the time of his plea, and as the officer said, his confessions were self-corroborating because of the facts he gave, which only the person involved in the various rape cases could have known. Relator says he has forgotten about the various line-ups and direct positive identifications.

As to the first contention, we feel that while the clerk may have used an awkward preposition in connection with "consecutively", yet it is perfectly clear what was meant.

As to the second contention about the burglary sentence, the certified copy which counsel presented used the word "concurrently" and yet an inspection of the docket itself shows the word to be "consecutively". The word appears to have been corrected by the clerk and clearly the word as it presently exists is "consecutively". If this sentence, however, were stricken off entirely, the relator would still have 20 years to serve before this particular burglary sentence would affect him in any way, and the writ would now be premature.

As to the third contention, the evidence to the contrary is so overwhelming that it is not necessary to comment further upon it.

As to the fourth contention, we have already commented upon it and it is without merit.

As to the question of counsel, there is not the slightest evidence that his foster uncle or anyone else was prevented from obtaining counsel for him. While the trial judge feels that he certainly did ask relator at the time of the plea if he wished to have counsel appointed for him, yet the trial judge has no specific recollection as to that except that in felony cases it is always done. Chief Sweeney, however, states that from his recollection relator was so asked and stated that he was pleading guilty and did not desire counsel.

Relator also complains that his plea was taken while he was in the county prison. At the time the plea was taken, it was the custom for the warden, before each term of court, to ask if any of the prisoners desired to plead guilty. If any such prisoner expressed a desire to do so, an assistant district attorney was sent to the jail to interview such prisoner.

Apparently Victor J. Roberts was the assistant district attorney who interviewed Jackson and after Jackson's sentence Mr. Roberts wrote a letter to the penitentiary authorities setting forth his views about Jackson. Parts of that letter were read without objection, and attest to relator's sex abnormalities, already referred to. The practice of taking pleas in the jail has now been changed and all arraignments are in open court. However, we feel that relator was not prejudiced by being interviewed in the jail and certainly the practice does not require us to sustain the writ.

It is interesting to note that with the writ returned by the warden of the penitentiary was a notation in red ink that there is a detainer from Philadelphia, where relator is under a sentence of 12½ to 25 years for rape, to begin at the end of his present sentence.

Relator presently appears to be a well-mannered nice looking colored man and apparently gets along

well in the penitentiary. If relator could safely be released without danger to society, it may be that the relief sought here should be sought through the board of pardons. As already indicated, the sentences were imposed not so much to punish relator as to protect society from what appeared to be a continuing menace.

And now, February 5, 1957, the writ is discharged and relator remanded to serve the remainder of his sentences.